**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
BRENDA JACKSON JOHNSON,                 )
Parent and Next Friend of T.J.,                    )
                                                              )
                          Plaintiff,                         )
                                                              )
            v.                                                  )            Civil Action No. 11-0894 (ABJ)
                                                              )
DISTRICT OF COLUMBIA,                        )
                                                              )
                          Defendant.                       )
_____)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Brenda Jackson Johnson ("parent"), acting on behalf of her child ("T.J." or "the student"), brought this action against defendant District of Columbia pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, challenging a Hearing Officer's determination that T.J. had not been denied a free and appropriate public education and was not entitled to compensatory education.  On July 18, 2011, the Court referred the case to Magistrate Judge Deborah A. Robinson. [Dkt. # 8].  Plaintiff moved for summary judgment [Dkt. # 13], and defendant cross-moved for summary judgment [Dkt. # 14].  On February 15, 2012, Magistrate Judge Robinson issued a Report and Recommendation ("Report") [Dkt. # 19] upholding the Hearing Officer's determinations.  After careful review of the Report, plaintiff's objections, defendant's response to plaintiff's objections, and the Administrative Record, the Court will adopt the Report in its entirety.  Accordingly, the Court will grant defendant's motion for summary judgment [Dkt. # 14] and deny plaintiff's motion for summary judgment [Dkt. # 13].

## I.      STATUTORY FRAMEWORK

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for future education." 20 U.S.C. § 1400(d)(1)(A). To receive funding under the IDEA, school districts must adopt procedures to ensure appropriate educational placement of students with disabilities. *Id*. § 1413. The IDEA's free appropriate public education ("FAPE") provision entitles each student with a disability to a comprehensive plan, known as an individualized education program ("IEP"), that will meet his or her specialized educational needs. *Id*. § 1414(d)(2)(A) ("At the beginning of each school year, each [state] shall have in effect, for each child with a disability in [its] jurisdiction, an individualized education program."). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 204 (1982).

The IDEA requires that students with disabilities be placed in the "least restrictive setting" appropriate to their needs, allowing them to be educated in an integrated setting with children who do not have disabilities to the maximum extent possible. 20 U.S.C. § 1412(a)(5)(A). It also provides parents of students with disabilities the opportunity to participate in the evaluation and placement process. *Id*. §§ 1414(e), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see id.* §§ 1415(b)(6), (f)(1)(A), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." *Id*. § 1415(h). A qualified impartial hearing officer conducts the due process hearing. *Id*. § 1415(f)(3)(A).

Parents may appeal a hearing officer's findings and decision by bringing a civil action in either state or federal court. *Id*. § 1415(i)(2)(A). The district court has remedial authority under the IDEA and broad discretion to grant "such relief as the court determines is appropriate." *Id*. § 1415(i)(2)(C)(iii).

## II.      STANDARD OF REVIEW

When a party objects to a magistrate judge's recommended disposition, the Court reviews the magistrate judge's recommendation *de novo*. Fed. R. Civ. P. 72(b)(3); *see also Smith v. District of Columbia*, Civil Action No. 10-1628, 2012 WL 746396, at *1 (D.D.C. Mar. 6, 2012); *D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 1 (D.D.C. 2007). The Court may "accept, reject, or modify" the magistrate judge's recommendation. Fed. R. Civ. P. 72(b)(3).

When reviewing an administrative decision made under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Moreover, the party challenging the decision "must at least take on the burden of persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005), quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989). And although this Court must give "due weight" to the hearing officer's determinations, *Rowley*, 458 U.S. at 206, that decision receives less deference than conventional administrative decisions. *Kerkam*, 862 F.2d at 887.

### III.    ANALYSIS

Plaintiff raises three objections to the recommended conclusions in the Report.   The Court will address each in turn.[1]

### A.  Procedural Objections to Recommendation on Extended School Year Services

Plaintiff first objects to the Magistrate Judge's finding that defendant's failure to provide extended school year ("ESY") services did not procedurally deny the student a FAPE. Pl.'s Objections to Report & Recommendations ("Pl.'s Objections") [Dkt. # 20] at 6–7. Specifically, plaintiff complains that the Magistrate Judge relied, at least in part, on the fact that the parent had signed and thereby approved the February 2010 IEP, which stated that the student did not need ESY services.  *Id.* at 3, 5.   Plaintiff points out that there is undisputed testimony that the parent did not attend the IEP meeting, but she simply signed the IEP when it was brought to her home later.  Hr'g Tr. [Dkt. # 12] at 27–28.   She argues that a parent's failure to participate in the IEP process should be deemed a procedural denial of a FAPE notwithstanding the signature on the IEP.  Pl.'s Objections at 5–6.

But the authority that plaintiff cites for this proposition does not support a finding that the student was denied a FAPE.   The IDEA provides that when a plaintiff alleges a procedural obligation, "a hearing officer may find that a child did not receive a [FAPE] only if the procedural inadequacies . . . *significantly impeded* the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE]."   20 U.S.C. § 1415(f)(3)(E)(ii) (emphasis added).   Here, the mere fact that the parent did not attend the February 2010 IEP meeting does not alone demonstrate that the parent's opportunity to participate was impeded at all, much less that it was "significantly impeded."   And plaintiff points to no other evidence to

---

[1]      Additionally, the Court will incorporate the factual background of this case set forth in detail in the Magistrate Judge's Report.

indicate that defendant hindered the parent's opportunity to participate in developing the plan. Plaintiff does not allege that she did not have notice of the IEP meeting; the parent signed the February 2010 IEP; and, perhaps most significantly, the parent – along with the parent's educational advocate – attended a subsequent October 2010 IEP meeting where the student's IEP was amended but still did not provide for ESY.  Administrative Record ("A.R.") [Dkt. # 11] at 6–7.  Thus, the parent's absence from the February 2010 meeting does not provide a basis to conclude that the student was denied a FAPE.

### B.  Substantive Objections to Recommendation on ESY Services

Plaintiff also challenges the Report on substantive grounds, objecting to the Magistrate Judge's finding that defendant did not deny the student a FAPE by failing to provide ESY services.  Plaintiff sets forth the applicable legal standard:  "ESY Services are only necessary to a FAPE when the benefits a disabled child gains during a regular school year will be significantly jeopardized if he is not provided with an educational program during the summer months."  *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 537–38 (4th Cir. 2002); s*ee also S.S. ex rel. Shank v. Howard Rd. Acad.*, 585 F. Supp. 2d 56, 68–69 (D.D.C. 2008) (adopting the standard from *MM*).  She also notes that the likelihood that a student will regress can be established by expert testimony.  *See MM*, 303 F.3d at 538.

But plaintiff fails to point to any evidence in the record that would support the necessary finding that ESY services were necessary.  Unfortunately, the record does not establish either that the student was making gains, or that gains would be significantly jeopardized (or even partially jeopardized) without the reinforcement that a summer program would provide.  ESY services are not recommended in any of the IEPs, and there is no indication that the parent suggested ESY or disagreed with the recommendation of no ESY.  Moreover, the record

indicates that the student's lack of progress is largely attributable to her truancy, and there is nothing in the record to indicate that ESY would remedy that.  *See, e.g.*, A.R. at 112–14. Plaintiff's expert did suggest that the student has not made academic progress and would benefit from ESY, *see* Hr'g Tr. at 72, but that is not sufficient to establish that it is "necessary" to a FAPE.  *M.M.*, 303 F.3d at 538 (finding that "the mere fact of likely regression is not a sufficient basis" to establish the need for ESY).  Furthermore, "all students, disabled or not, may regress to some extent during lengthy breaks from school.  ESY Services are required under the IDEA only when such regression will substantially thwart the goal of 'meaningful progress.'"  *Id.*, citing *Polk v. Centr. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988).  Given the lack of evidence to support the necessity of ESY, there are no grounds to reject the Report on this point.

### C.  Objections to Compensatory Education Determination

Finally, plaintiff challenges the finding that defendant was not bound to provide compensatory education.  Pl.'s Objections at 8.  A student is entitled to receive compensatory education when she has been denied a FAPE.  *Reid*, 401 F.3d at 518.  A material failure to implement an IEP can constitute a denial of a FAPE.  *S.S.*, 585 F. Supp. 2d at 58.

Plaintiff takes issue with the Magistrate Judge's conclusion – which adopted the Hearing Officer's finding – that plaintiff had failed to demonstrate that the IEP was not implemented. Pl.'s Objections at 8.  She correctly points out that the February 2010 IEP specifically recommended that the student be removed from general education for twenty-six hours per week for specialized instruction and one hour per week of behavioral support services.  A.R. at 116; Pl.'s Objections at 9.  However, the Court agrees with the Hearing Officer and the Magistrate

Judge that plaintiff did not present evidence to demonstrate that these provisions of the IEP were not implemented.

There is undoubtedly much information in the IEP that demonstrates that the student would benefit from a smaller setting or a self-contained classroom, *see, e.g.*, A.R. at 112–13, 115–116, so it makes sense that the IEP would call for the student to be pulled out of the general population for a significant portion of the week. However, as the Hearing Officer explained in his decision, plaintiff presented no testimony at the hearing to demonstrate that after the IEP was signed, T.J. did not receive these benefits. A.R. at 8–9. Instead, plaintiff's expert simply pointed to a statement in the IEP that said:

> Though [the school] is doing full inclusion, a resource class was made available to [T.J.] and her siblings so that additional support and constant monitoring is possible. [T.J.] has never attended the resource class. A self[-]contained or a smaller setting is recommended for this student.

A.R. at 115. This statement does not bear the significance that plaintiff wishes to give it. First, the sentence is from the February 2010 IEP, so instead of being a statement about what happened *after* the IEP was signed, it is a statement about what happened *before* the IEP was signed, when there was a similar provision for twenty-six hours of pull-out instruction in place. *Id.* In other words, the observation supported the renewed recommendation of pull-out instruction. Moreover, the clause "[t]hough [the school] is doing full inclusion" is not an admission that the school did not give T.J. the specialized, individualized instruction that she needed; it simply describes the school's general approach, and that becomes obvious when one reads the rest of the sentence that explains that a resource class was made available to T.J. *Id.* In addition, as noted before, the comment discusses the period before the February 2010 IEP took effect. *Id.* Plaintiff points to nothing that would indicate that the resource class was not provided in accordance with the IEP *after* the IEP was implemented. And plaintiff's expert testimony proffers no support for

7

this point beyond a review of the language in the IEP.  *See* Hr'g Tr. 70–71.  Therefore, plaintiff's third objection also fails.

## IV.  CONCLUSION

Therefore, based on the Court's review of the Administrative Record, the Magistrate Judge's Report and Recommendation, plaintiff's objections, and defendant's response to these objections, the Court will adopt the Magistrate Judge's Report and Recommendation; accordingly, the Court will deny plaintiff's motion  for summary judgment [Dkt. # 13] and grant defendant's cross motion for summary judgment [Dkt. # 14].  A separate order will issue.

                                                    /s/
                                         AMY BERMAN JACKSON
                                         United States District Judge

DATE: July 10, 2012